# United States District Court

Southeastern Division                                   DISTRICT OF North Dakota

UNITED STATES OF AMERICA
V.
Sean Anthony Ogle

**CRIMINAL COMPLAINT**

CASE NUMBER: 3:08-mj-107

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or JAN 2007-October 2008 in Cass County, in the _____ District of North Dakota defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally combine, conspire, confederate, and agree together with others to distribute and did possess with intent to distribute methamphetamine, a Schedule II controlled substance;

in violation of Title 21 United States Code, 846

I further state that I am a(n) DEA Task Force Officer and that this complaint is based on the following
Official Title
facts: See Affidavit EXHIBIT ATTACHMENT B

Continued on the attached sheet and made a part    ☒ Yes   ☐ No

_Charles Anderson, Task Force Officer_
Signature of Complainant

Sworn to before me, and subscribed in my presence,

October 2, 2008                                          at Fargo, North Dakota
Date                                                         City and State

Karen K. Klein, US Magistrate                            _Karen K Klein_
Name and Title of Judicial Officer                        Signature of Judicial

**EXHIBIT ATTACHMENT B**

**PROBABLE CAUSE AFFIDAVIT**

<u>**AGENT INTRODUCTION AND OVERVIEW**</u>

I, Charles Anderson, being first duly sworn on oath, depose and state the following reasons and grounds for my belief that there is probable cause for seizing SEAN ANTHONY OGLE due to the following:

1. I am a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice. I have been so employed since, September of 1999, and I am currently assigned to the Fargo, North Dakota, Resident Office.

2. My responsibilities and duties as a DEA Task Force Officer include investigating alleged violations of the Federal Controlled Substances Act, which includes drug trafficking crimes and other duties imposed upon me by law.

3. I have successfully completed the requirements of the Drug Enforcement Administration's Basic Training. During this training, federal drug conspiracy, money laundering and clandestine laboratory manufacturing investigations were instructed.

4. Further I have initiated and participated in several local and interstate drug investigations, relative to the violations of state and federal law. As a result, I have conducted several short-term, small-scale street-level operations; as well as conducted large-scale, long-term and multi-jurisdictional investigations involving poly-drug trafficking organizations and their criminal cells.

5. In so doing, I have planned and participated in and/or executed numerous search and seizure warrants. Most commonly, these warrants authorized the search of locations ranging from the residences of drug traffickers and their co-conspirators or associates, stash houses, clandestine drug preparation sites and packaging homes, businesses as well as safe deposit boxes and storage facilities.

6. I have made numerous arrests throughout the region; and I have debriefed defendants, confidential sources, sources of information and witnesses who have first hand knowledge of the methods and terminology utilized by drug traffickers and their associates. I have also supplied information to support affidavits and/or sworn to affidavits and provided testimony at trial.

7. I continue to further my education and training by attending various conferences, seminars and schools relating to the craft work and techniques associated with organizing and conducting criminal investigations, namely narcotics and especially in the area of electronic communications and intelligence analysis. I also speak publicly to community organizations, schools and groups about demand reduction programs and narcotics enforcement in general.

8. Based on my experience and training, I know that Conspiracy to possess and distribute controlled substances is a violation of Title 21, United States Code, Section 846.

9. Since in and around January of 2008, I have been involved in an investigation involving the illegal possession and distribution of controlled substances namely in the State(s) of North Dakota and Minnesota. I am thoroughly familiar with the information contained in this affidavit, either through personal investigation or through discussions with other persons who have interviewed individuals or personally obtained information that they have reported to me.

10. During this investigation I, and others acting at my direction, have conducted many of hours of surveillance and analysis of information on various suspects identified during the course of this investigation.

11. Based on numerous interviews with defendants, confidential informants, local law enforcement and cooperating citizens I have learned that Sean Ogle and others known and unknown have been involved in the illegal importation and distribution of high-grade methamphetamine aka crystal methamphetamine aka ``ice'' and other controlled substances yet to be determined in the District of North Dakota for approximately Four years.

**RELEVANT FACTS AND CIRCUMSTANCES**

12. On 08-29-08 TFO Anderson assisted Fargo Police with a search warrant at 2540 14th Street South, Apt. 305.  Fargo Police had conducted an undercover controlled purchase from Richard Heyen who was identified as the occupant of that residence. During the search of the residence there was approximately seven grams of methamphetamine found along with packaging material and paraphernalia.

13. During the search warrant an individual arrived at Heyen's residence that was identified as Todd Leland Vise.  Vise was found to be in possession of one ounce of methamphetamine on his person. Vise stated he has been acquiring methamphetamine off and on for a long period of time from an individual that lives in the Minneapolis-St. Paul area who he identified as

    Sean Ogle. Vise stated the ounce of methamphetamine on his person and the seven grams of methamphetamine that Heyen was in possession of came from Ogle. Ogle delivered approximately one and a half ounces approximately one week prior.

14. Vise stated he had been receiving methamphetamine from Ogle for a long period of time and had recently quit, however, Ogle showed up and then gave him methamphetamine and he got back into the business.

15. Vise stated Heyen was his only customer and that Heyen sells the methamphetamine for him.

16. Vise stated he usually gets one ounce quantities from Sean Ogle and has received ounce quantities more than one time and stated he could not count the number of times, he was not sure.

17. Vise stated he knows Jared Nikle and is aware that Nikle and Ogle are connected. Nikle also has a person by the name of Jason or J as a contact down in Minneapolis-St. Paul that Vise has heard Nikle speak about.

18. On 09-12-08 TFO Anderson interviewed Paula Harland at the Cass County Jail. TFO Anderson interviewed Paula Harland concerning information that was provided concerning Jay Carl Weist. Paula Harland advised that she was able to observe activities at the Weist residence. Paula Harland stated Weist resides at 1634 2nd Street North. Paula Harland is aware that Weist is getting methamphetamine on a weekly basis from a male by the name of Sean from the Minneapolis-St. Paul area. Sean brings methamphetamine to Weist's residence.

19. Paula Harland was aware that in April of 2008 Jay Weist gathered approximately $4,000 which he said he had to give to Sean. Sean made a trip to Arizona with $45,000 for the purpose of acquiring methamphetamine. Sean brought methamphetamine to Weist which was described by ~~[redacted]~~ Paula As (CA)10-2-08 follows: Paula Harland advised that Weist showed Paula Harland three bags of methamphetamine, the first Weist (KK-10-2-08) described as being 75% pure, this was approximately three inches by five to six inches tall in a bag that was half full. It had rocks of shards of methamphetamine approximately one-half inch in diameter. The second bag was approximately 85% pure and was about the same size or volume of methamphetamine, however, it had one inch in diameter rocks of methamphetamine. The third bag, which was described as 95% pure, had golf ball sized rocks of methamphetamine and was completely full.

20. Weist has advised Paula Harland that Sean was also stopping at Todd Vise's residence in North Fargo.

3

21. On 09-13-08 TFO Anderson TFO Anderson went to the Cass County Jail and spoke to Jared Nikle. Nikle stated he was aware of what TFO Anderson wanted in reference to information. Nikle stated he has recently been in contact with Todd Vise and was aware of Vise's situation. Nikle stated he knows a lot of information concerning Sean Ogle.

22. Nikle stated Sean Ogle is in town on 09-13-08. Nikle stated Ogle is at Jay Weist's residence.

23. Nikle stated Jay Weist is selling methamphetamine for Sean Ogle. Sean Ogle makes a trip every one to two weeks and drops off two to eight ounces per trip at Jay Weist's residence. Nikle stated this information had been acquired from Todd Vise.

24. Nikle was aware that Sean Ogle is involved in the distribution of methamphetamine to Jay Weist, Todd Vise, and Richard Heyen.

25. Nikle was aware that Sean Ogle has made two trips to Arizona in 2008.

26. Jared Nikle explained when he was engaged in the distribution of methamphetamine with Jason Moe that he would go to Jason Moe's residence and would see Sean Ogle at Jason Moe's residence at the same time. Nikle has observed Jason Moe distribute methamphetamine to Sean Ogle two to three different times and observed one to four ounces be distributed. Nikle stated he is also aware that Ogle was over at Jason Moe's on other occasions learning that from Moe because Ogle had just been there prior to Nikle's arrival. This activity took place in the spring/summer of 2007.

27. Nikle stated Jason Moe and Sean Ogle got into business together after Moe got out of prison in 2006.

28. Nikle stated him, Richard Heyen, Sean Ogle, Todd Vise, Jay Weist and Brian Kaiser all went to school together in Fargo in the same time period. He stated that's how these individuals are all involved in dope together.

29. On 09-17-08 TFO Anderson assisted Fargo Police Department with the service of a search warrant on the residence of Jay Weist, 1634 3rd Street North, Fargo, ND

30. The search was conducted and several larger packages of marijuana were found secreted in the garage and a motor vehicle in the garage. A sum of currency in excess of $2,000 was also seized from the vehicle that contained marijuana.

31. Jay Weist was interviewed by TFO Anderson. Weist states he

4

knows Sean Ogle. Weist states he has acquired marijuana from Sean Ogle and last saw Ogle approximately one month ago. Weist states he has acquired methamphetamine from Sean Ogle, however, he states he only gets a gram or two.

32. On October 1, 2008, TFO Orie Oksendahl was in Minneapolis to arrest Jason Moe. TFO Orie Oksendahl was conducting surveillance on Jasons Moe's residence and learned that Moe and Sean Ogle were in the residence. TFO Orie Oksendahl was able to stop Ogle upon leaving the Moe residence. Ogle was found in possession of approximately one half ounce of Methamphetamine. Ogle was arrested and charged with possession of methamphetamine with intent to distribute in, Hennepin County, State of Minnesota Court.
33. TFO Orie Oksendahl arrested Jason Moe and obtained a State of Minnesota search warrant for Moe's residence. Approximately one pound of methamphetamine was seized from Moe's residence.
34. TFO Orie Oksendahl interviewed Jason Moe and was advised by Moe that Sean Ogle has been involved in the acquisition of methamphetamine from Moe and the distribution of methamphetamine in the Fargo, North Dakota area and other locations to individuals including Todd Vice.

35. Since this affidavit is being submitted for the purpose of seizing and indicting said subject, I have set forth facts that I believe are essential to establish the necessary probable cause to arrest, detain and indict said subject.

36. As a result the cited information, I believe that probable cause exists that Sean Ogle, did knowingly and willingly conspire to possess and distribute a controlled substance to-wit methamphetamine a schedule II Controlled Substance, and other controlled substances yet to be determined, in violation of Title 21, United States Code, Section 846.

Based upon the aforementioned facts, TFO Charles Anderson respectfully requests your honor and the Court to issue a warrant to arrest and detain said subject.

_____
TFO Charles Anderson
Drug Enforcement Administration

5

Subscribed and Sworn to before me, this 2nd day of October, 20 08.

*Karen K Klein*

UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NORTH DAKOTA



United States Magistrate Judge, District of North Dakota

6